Filed 11/4/24  P. v. Villareal CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F087481 |
| Plaintiff and Respondent, | |
| | (Super. Ct. No. F12900197) |
| v. | |
| MANUEL RAY VILLAREAL, | **OPINION** |
| Defendant and Appellant. | |

## THE COURT*

APPEAL from an order of the Superior Court of Fresno County.  Arlan L. Harrell, Judge.

Law Office of Nicco Capozzi and Nicholas A. Capozzi; Law Office of Anthony P. Capozzi and Anthony P. Capozzi for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Jessica C. Leal, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

* Before Poochigian, Acting P. J., Peña, J. and Snauffer, J.

In 2015, defendant Manuel Villareal pleaded no contest to voluntary manslaughter and admitted gang participation and weapon use allegations. In 2022, he petitioned for resentencing under Penal Code former section 1170.95 (now section 1172.6).[1] The superior court issued an order to show cause and denied the petition after an evidentiary hearing, finding Villareal guilty of murder as the actual killer under current law.

Villareal raises four issues on appeal. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. The crime

The following facts are taken from the preliminary hearing transcript, which by party stipulation served as the factual basis of Villareal's plea.

J. was one of two witnesses called at the preliminary hearing. He testified he was at a party at his neighbor's apartment on the night of October 22, 2011. Villareal and a man called "Baby" were there. Another man called "Shorty" arrived later and mentioned a party. Shorty told Villareal he "wanted to go to the party to handle that fool." Villareal said, "Well, all right. Well, let's go, I'll handle that fool." J. did not know who Shorty and Villareal were referring to as "that fool." During Shorty and Villareal's conversation, J. saw Villareal "playing" with a knife that looked like a switchblade. Shorty and Villareal left about 15 minutes later.

H. was the other witness called. That same evening, H. was hanging out in the backyard of a friend's house, and a party was going on in the backyard next door. H. saw Villareal, "David,"[2] and "Miguel"[3] approach Lynn Snowden at the party in the neighbor's backyard. Things looked confrontational, and Villareal and Snowden started arguing.

---

[1] Undesignated statutory references are to the Penal Code.

[2] David's moniker is "Baby."

[3] Miguel's moniker is "Shorty."

Villareal threw a punch at Snowden, which Snowden dodged.  Snowden then ran through the house and into the front yard.  A fight then broke out at the party and Villareal and two others chased after Snowden.  H. ran to the front of the house and saw Snowden running towards the road while Villareal and the two others gave chase.  Snowden ran out of H.'s sight.  Villareal got into the passenger seat of a truck with David driving, and they sped off in the opposite direction from which Snowden ran.  David drove around the block, and by the time he returned to the area, Snowden was running back towards the house where H. was standing.  The truck cut off Snowden's path and Villareal got out of the truck.  Villareal reached to his waistband as he approached Snowden, and Snowden stepped back with his hands raised in front of himself as if to say "no."

The hood of the truck blocked H.'s view of Villareal and Snowden from the waist down.  While Villareal and Snowden were facing each other, Villareal wrapped his left arm around Snowden's upper back, pulled Snowden towards him, and made two "uppercut" motions, which were "more like … stabbing" motions, to Snowden's neck area.  H. did not see anything in Villareal's hand.[4]  Villareal got back into the truck and left.  Snowden "wobbled" for about two minutes before falling to the ground.  Snowden did not move after that.  The people from the party, who were still fighting in the street, all ran away after noticing Snowden on the ground.

Snowden's death certificate, to which the parties stipulated for purposes of the preliminary hearing, stated the cause of Snowden's death was "penetration of ascending aorta due to a stab wound to the chest, specifically, that the decedent was stabbed by another."

---

[4] The prosecutor asked, "Did you see anything in [Villareal's] hand?"  H. answered, "No."

3.

## II. The information, negotiated plea, and sentencing

In August 2012, the People filed an information charging Villareal with one count of murder (§ 187, subd. (a)). With the murder charge, the People alleged Villareal personally used a deadly weapon (a knife) (§ 12022, subd. (b)(1)).

In January 2015, the People filed an amended information charging Villareal with voluntary manslaughter (§ 192, subd. (a)). It was further alleged the offense was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)) and that Villareal personally used a deadly and dangerous weapon (a knife) (§ 12022, subd. (b)(1)). The same day the amended information was filed, the parties appeared in court for a change of plea hearing. The prosecutor explained the amended information was filed as part of resolving the case. Villareal pleaded no contest to the voluntary manslaughter and admitted the gang and weapon use allegations in exchange for a sentence of 17 years. The parties stipulated to the preliminary hearing transcript as a factual basis for the plea, and the trial court accepted the plea. At the sentencing hearing, the court imposed the negotiated 17-year term.

## III. Petition for resentencing

In September 2022, Villareal, representing himself, petitioned for resentencing under section 1170.95 (now section 1172.6). Checking boxes on a form petition, Villareal requested appointment of counsel and alleged (1) the People filed an information allowing the prosecution to proceed under a theory of felony murder, murder or attempted murder under the natural and probable consequences doctrine, or murder under some other theory under which malice is imputed to a person based solely on that person's participation in a crime, (2) that he accepted the plea offer in lieu of a trial at which he could have been convicted of murder or attempted murder, and (3) that he could not now be convicted of murder or attempted murder because of changes made to sections 188 and 189, effective January 1, 2019.

4.

The trial court appointed counsel, and the parties submitted briefing on whether Villareal had stated a prima facie showing for relief.  In their opposition, the People argued Villareal was ineligible for relief as a matter of law because the transcripts of the preliminary hearing and change of plea hearing showed he was the actual killer.  The trial court held a hearing on whether Villareal had made a prima facie showing, after which the court issued an order to show cause and set an evidentiary hearing.

The parties submitted briefing ahead of the December 4, 2023, evidentiary hearing.  The People relied on the preliminary hearing transcript and the stipulations made at the preliminary hearing.  There was no live testimony.  After hearing argument from the parties, the trial court took the matter under advisement.  At a hearing in January 2023, the trial court denied Villareal's petition, finding him guilty of murder as the actual killer under current law.

## DISCUSSION

Villareal raises four issues challenging the trial court's order denying his section 1172.6 petition.  We address the issues in the order he asserts them.

## I.  Senate Bill No. 1437 and Section 1172.6

Effective 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Reyes* (2023) 14 Cal.5th 981, 984; *People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*)) and significantly narrowed the scope of the felony-murder rule (§§ 188, subd. (a)(3), 189, subd. (e); see *People v. Curiel* (2023) 15 Cal.5th 433, 448–449 (*Curiel*); *People v. Strong* (2022) 13 Cal.5th 698, 707–708 (*Strong*); *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*)).  Section 188, subdivision (a)(3), now prohibits imputing malice based solely on an individual's participation in a crime and requires proof of malice to convict a principal of murder, except under the revised felony-murder rule in section 189, subdivision (e).  The latter provision now requires the People to prove that the defendant was the actual killer (§ 189,

5.

subd. (e)(1)); an aider and abettor to murder who had the intent to kill (§ 189, subd. (e)(2)); or a major participant in an underlying felony listed in section 189, subdivision (a), who acted with reckless indifference to human life as described in subdivision (d) of section 190.2. (§ 189, subd. (e)(3); see *Curiel*, at p. 448; *People v. Wilson* (2023) 14 Cal.5th 839, 868–869; *Strong*, at p. 708; *Gentile*, at pp. 842–843.)

With these changes, the Legislature also provided a procedure (now codified in section 1172.6) for "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter" to petition the superior court to vacate the conviction and be resentenced on any remaining counts if the person could not now be convicted of murder, attempted murder, or manslaughter because of the changes to sections 188 and 189. (§ 1172.6, subd. (a); see Sen. Bill No. 775, ch. 551 (2021–2022 Reg. Sess.) § 1 [extending Senate Bill 1437's ameliorative changes and procedure for potential relief to individuals convicted of attempted murder or voluntary manslaughter].)

If a section 1172.6 petition contains all the required information, the sentencing court must appoint counsel to represent the petitioner if requested. (*Lewis, supra,* 11 Cal.5th at pp. 962–963; see § 1172.6, subd. (b)(1)(A), (b)(3).) The prosecutor must then file a response to the petition, the petitioner may file a reply, and the court must hold a hearing to determine whether the petitioner has made a prima facie showing that the petitioner is entitled to relief. (§ 1172.6, subd. (c).) If the petitioner makes such a showing, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction and resentence the petitioner on any remaining counts. (§ 1172.6, subds. (c) & (d)(1).) At the evidentiary hearing, each party may present new evidence and the prosecution

bears the burden of proving, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under current law.  (§ 1172.6, subd. (d)(3).)

## II.     The issues

### A.     Reliance on preliminary hearing testimony

At the evidentiary hearing, Villareal's counsel objected to the trial court relying on the transcript of Villareal's preliminary hearing.  He maintains on appeal that preliminary hearing testimony is hearsay that cannot be relied on at the evidentiary hearing unless the testimony is admissible under some exception to the hearsay rule.[5]  He is incorrect.

Section 1172.6, subdivision (d)(3), governs the admission of evidence at the evidentiary hearing.  It provides, in relevant part, "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed…. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule."  (§ 1172.6, subd. (d)(3).)

*People v. Davenport* (2023) 95 Cal.App.5th 1150 (*Davenport*) addressed the admissibility of a preliminary hearing transcript at a section 1172.6 evidentiary hearing. The court held a "plain reading" of section 1172.6, subdivision (d)(3), compels the conclusion that a preliminary hearing transcript is generally admissible:  "First, the provision unambiguously provides that a trial court ruling on the merits of a resentencing petition 'may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony.'  (§ 1172.6, subd. (d)(3).)

---

[5] In the opening brief, the heading for this issue plus the supporting argument takes up only half a page.

Second, because of the proviso that the trial court may not consider hearsay testimony that was admitted into evidence at a preliminary hearing under subdivision (b) of section 872, unless some other hearsay exception applies, section 1172.6, subdivision (d)(3) expressly contemplates that preliminary hearing testimony in particular will be considered at an evidentiary hearing." (*Davenport,* at p. 1158.) The court determined that section 1172.6, subdivision (d)(3), creates a new hearsay exception for former testimony given at a preliminary hearing, so long as that testimony was not admitted under section 872, subdivision (b). (*Davenport,* at p. 1158.)

The *Davenport* court summarized its interpretation of section 1172.6 as follows: "[T]he rules of evidence apply to hearings held under section 1172.6, subdivision (d); under those rules, hearsay is inadmissible in the absence of an exception; and the pertinent exception here is the clause in section 1172.6, subdivision (d)(3), stating that 'except that the court may consider evidence previously admitted at any prior hearing ….' " (*Davenport, supra,* 95 Cal.App.5th at p. 1158.) Although section 1172.6, subdivision (d)(3), also requires evidence admitted at the hearing to be " 'admissible under current law,' " the court determined "the most natural reading of those words is that the basis for admission of testimony at the hearing or trial in which it was previously admitted must remain a valid basis for admitting the testimony 'under current law.' " (*Davenport,* at p. 1158, italics omitted.)

We agree with *Davenport*'s reasoning and conclude that the plain language of section 1172.6, subdivision (d)(3), compels the conclusion that a preliminary hearing transcript is generally admissible at the section 1172.6 evidentiary hearing. Further, Villareal does not suggest his preliminary hearing involved hearsay testimony admitted under section 872, subdivision (b). As a result, the preliminary hearing transcript falls within the hearsay exception created by section 1172.6, subdivision (d)(3), and was admissible on that basis.

8.

## B. The change of plea form

Villareal next contends that his "change of plea form does not establish beyond a reasonable doubt that [he] was the actual killer." In support of this issue statement, he asserts, without citing anything in the record, that he felt pressured to take his plea deal. It makes no sense why he is raising this issue because the trial court did not rely on the change of plea form in denying his section 1172.6 petition. So even were we to agree the form does not prove he was the actual killer, no reversible error would be shown.

## C. Sufficiency of the evidence

Villareal's third claim of error is hard to understand. The issue heading reads: "Third, there were issues of fact even if one considered only the preliminary hearing transcript, especially at the highest standard of proof beyond a reasonable doubt." As best we can tell, Villareal is asserting the evidence was insufficient to support a finding that he is guilty of murder beyond a reasonable doubt. In support, Villareal points to H.'s testimony that H. did not see Villareal with a weapon and thus did not see Villareal actually stab Snowden. He implies this testimony tends to show he did not stab Snowden. He also points to purported DNA evidence which he claims cuts against the theory that he stabbed Snowden.

"We review the trial court's determination at the section 1172.6 evidentiary hearing for substantial evidence." (*People v. Nieber* (2022) 82 Cal.App.5th 458, 476.) Under this standard, we accept all evidence supporting the trial court's order, completely disregard contrary evidence, and draw all reasonable inferences to affirm the trial court. (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 581 (*Schmidt*).)

As we will explain in the next section of our discussion, the purported DNA evidence was not offered into evidence. The trial court thus could not—and did not— consider it, and neither can we. (*People v. Ng* (2022) 13 Cal.5th 448, 516 [appellate court does not consider evidence outside of trial court record].) As for H.'s testimony, he did not affirmatively state that Villareal was empty-handed. He only said that he did not

see anything in Villareal's hand.  It is thus possible Villareal had a weapon, but H. just could not see it.  Therefore, contrary to Villareal's assertion, H.'s testimony is not inconsistent with Villareal having killed Snowden with malice.  (*Schmidt, supra,* 44 Cal.App.5th at p. 582 ["Inferences favorable to appellants may create conflicts in the evidence, but that is of no consequence."].)  Villareal has not established the evidence was insufficient to support a finding he murdered Snowden.

### D.     DNA evidence

Lastly, Villareal contends the trial court erred in failing to consider purported DNA evidence.  There was no error.

Villareal's counsel attached a purported DNA test results report to his brief submitted ahead of the evidentiary hearing but did not offer this evidence during the hearing.  In his appellate briefing, his counsel asserts this report shows that DNA from blood trails found at the scene were tested and matched two persons, neither of whom was Villareal.[6]

After the trial court stated its reasons for denying Villareal's petition, Villareal's counsel asked the court to confirm that it did not consider "the DNA [evidence] at all."  The court confirmed it did not because it was not admitted.  Counsel responded that it attached it as an exhibit, to which the court replied, "Counsel, since when does the attachment of an exhibit constitute evidence at a trial?"

On appeal, Villareal maintains the trial court erred in not considering the DNA test results report because "[t]he document was an official government document produced by the People through discovery."  This argument goes to the report's admissibility.  But the report's admissibility is not the issue.  The issue is that it was not offered during the

---

[6] Villareal is represented on appeal by the same attorney who represented him in the section 1172.6 evidentiary hearing below.

evidentiary hearing.  Villareal does not explain why the court was wrong to not consider evidence that was not offered during the hearing.  The court did not err.

## DISPOSITION

The order denying the section 1172.6 petition is affirmed.